---

## THE COYA.

(District Court, S. D. New York. April 15, 1901.)

1. SALVAGE—COMPENSATION—BASIS OF COMPUTATION.

A percentage, merely as a basis of allowance, is not a proper guide in fixing the amount of an award for salvage services, but the true rule is to make such an allowance as is reasonable, having in view all the circumstances of the service, and such as will afford all the encouragement and stimulus to salvage operations necessary to secure the most effective service. The only proper use of a percentage basis is to furnish a convenient mode for the apportionment on ship, freight, and cargo, of the amount which the court otherwise deems reasonable and sufficient.

2. SAME—BURNING WHARF—TOWAGE SERVICES.

The Coya, a steel steamship valued, with her cargo, at $230,000, was moored in the Erie Basin to a pier, from which she was breasted off about 20 feet by two intervening barges. During the night the shed on the pier was set on fire by a burning steamer, and burned. Some small boats and other articles on the upper deck of the Coya took fire, but it was extinguished by the ship's own fire apparatus, and otherwise she was uninjured. After the shed had been burning for an hour or more, the steamer was towed out of the slip to a place of safety by libelant's tugs, six of which participated, to a greater or less extent, in the service, which required about an hour. *Held* that, considering the fact that the ship was not at the time in present peril, $3,450 was a reasonable and proper allowance for the salvage services, to be divided between the tugs and their masters and crews, in proportion to the services rendered by each.

In Admiralty. Libels to recover for salvage services.

Wing, Putnam & Burlingham, Carpenter & Park, Mr. Symmere, and Avery F. Cushman, for libelants.

Black & Kneeland, for claimants.

BROWN, District Judge. In the above libels salvage compensa-
tion is demanded for services rendered to the steamship Coya at
about 2 o'clock in the morning of January 9, 1901, in towing her from
a fire on pier A in the Erie Basin, to a safe place of anchorage out-
side the basin near Governor's Island. The services were short, being
of only about an hour's duration, and rendered under circumstances of
much less danger to the steamship than might be at first supposed,
and much less than ordinarily exists in cases of salvage from fire.

The fire broke out on the wooden passenger steamer Idlewild,
moored at the breakwater on the opposite side of the basin; and that
steamer, having broken loose, was blown by the southerly wind
across the basin against the end of pier A, where it set fire to the
barge Old Glory loaded with jute, from which the fire was communi-
cated to the shed on pier A, and thence rapidly extended along the
shed of the pier to the bulkhead. The Coya, a steel steamer about
337 feet long and about 2,000 tons register lay bow in on the
westerly side of the pier, breasted off from it about 20 feet by two
barges between it and the pier. The fire on the Idlewild broke out
at a little after 1 o'clock a. m. and soon afterwards on pier A. Two
of the city fire boats not long after arrived on the scene and were
employed in playing streams of water upon the various vessels at the
end and on each side of the pier. This was sufficient to prevent the
fire from attacking the after part of the Coya, although a steamer on
the east side of pier A, being hemmed in by the burning barges, was
burned and sunk. As soon as the fire had attacked the pier, the
master cut loose all his mooring lines except one steel spring line
running to the pier aft from a point a little forward of the poop, and
began to warp the steamer across the slip towards the pier to the
westward of pier A; but some other tugs, coming to the aid of boats
in the slips, fouled the Coya's warping hawser and either broke or cut
it, so that the Coya had no further means of moving herself away.
At 1:40 a. m. some of the Coya's small boats on the upper deck, with
ropes, tarpaulins and spars and rigging on the forward part of the
ship, which could not be reached by the streams from the fire boats,
took fire from the adjoining wharf. The master, however, had his
steam fire apparatus in readiness, and it was so effective that all the
fire on the steamer was extinguished by him before 2 a. m. by the use
of the steamer's own fire pumps, with some aid from the fire boats,
except a little smouldering afterwards discovered, which was of no
material importance and was very soon put out.

It was not until about 2 o'clock, about three-quarters of an hour
after the fire first broke out, and at about the time, the fire on the
forward part of the steamer had been extinguished by the master, that
the first of the salving tugs arrived. They came in the following
order:

First, the Mutual, from which a hawser was thrown to the steam-
er's port quarter, where it was made fast by the steamer's men; soon
afterwards, the C. R. Stone, the M. Moran and the Unique, differing
but little in their time of arrival, and later the P. Cahill, when the
steamer was approaching the exit from the basin. For a brief period
she and some of the other tugs put a stream of water on the Coya;

but I regard this as of no importance whatever. The Mutual, the first to arrive, upon pulling upon her hawser when made fast, soon ascertained that the stern moved but a short distance, being held to the dock by the aft spring line. About that time the master of the C. R. Stone arriving and discovering that she was held fast, boarded the steamer, went to her starboard quarter and cut the steel hawser with an ax, thus enabling her to be moved out. In doing this he testifies that he was exposed to some danger, and that his trousers were burned. After the steamer was hauled out somewhat into the slip, a sixth tug, the Unity, pushed for a short period on her starboard quarter, but soon went away as unnecessary for further service. The position of the steamer at pier A was near the exit from the basin, and the turning and handling of the steamer to take her out through the gateway undoubtedly required considerable care and skill. It was accomplished, however, without any injury. The master after extinguishing the fire forward had come aft, soon after the Stone's arrival, approved her master's act in cutting the Coya's hawser, and invited him to the bridge to assist in the management of the steamer in getting out of the basin. She was anchored at a safe distance outside at about 3 a. m.

The most dangerous period for the Coya, namely, when the boats and other inflammable materials on her forward part had caught fire, was already past before any of these salving tugs arrived. Although the fire on the pier lasted for a considerable period, there is no indication from the evidence that the fire at any time became more dangerous to the Coya than before. Her decks were of steel, and as the previous fire forward was extinguished by the ship's own means, and as nothing on board again took fire, although the steamer remained in the same position for at least a half hour before the salving tugs got her away from the pier, it is manifest that the Coya, on the arrival of the tugs, was in no present peril, and that her previous apprehended danger had become very much diminished at the time she was removed. This circumstance distinguishes the present case from all other cases of salvage from fire to which I have been referred.

It was nevertheless very desirable, no doubt, that the vessel should be removed from the vicinity of this fire. The master was anxious that this should be done, and a moderate salvage award should be allowed for the services of the tugs that rendered substantial aid.

The saved values of the steamer, freight and cargo amount in all to $230,000.

The libelants ask an allowance of 10 per cent. of this sum, and cite in support of their contention an allowance of that percentage on one or more barges lying alongside and to the westward of the Coya and in her lee, which were removed by other tugs prior to the rendering of the services to the Coya. The circumstances leading to the allowance referred to do not appear. A percentage, merely as a basis of allowance, is not a proper guide and has been repeatedly condemned. The Suliote (C. C.) 5 Fed. 99; The Baker (C. C.) 25 Fed. 771, 774. The only guide is what appears to be a reasonable amount having in view all the circumstances of the service, and such a sum as

will afford all the encouragement and stimulus to salvage operations that can be deemed necessary to secure the most effective service. In the .case of The S. B. Baker (D. C.) 23 Fed. 109, Id. (C. C.) 25 Fed. 771, an allowance by this court of $750 for hauling out of her slip a burning loaded cotton barge, worth with cargo $32,000, was reduced on appeal to $350. The allowance of a percentage is made in this court merely as a convenient mode for an apportionment on ship, freight and cargo of such an amount as the court otherwise deems reasonable and sufficient. The St. Paul (D. C.) 82 Fed. 104, 108, 111.

In the present case, considering also the presence of numerous other tugs competent to render the same service, the sum of $3,450, being 1½ per cent. upon the values saved, will be in my judgment a . liberal and sufficient compensation for the services of these harbor tugs and answer all the purposes for which salvage awards are made. See Kaiser Wilhelm der Grosse (D. C.) 106 Fed. 963.

The above amount will be distributed as follows:

| | |
|---|---|
| To the Mutual | $ 800 00 |
| To the C. R. Stone | 800 00 |
| To the Unique, a large and valuable boat | 700 00 |
| To the Michael Moran | 700 00 |
| To the P. Cahill | 350 00 |
| To the Unity | 100 00 |
| | $3,450 00 |

Out of the amounts above awarded to each tug, I allow to the master of the C. R. Stone $100; the master of the Unity $10; and to each of the other masters $50. Of the balance, I allow one-fourth to the officers and crew, including the master, to be distributed among them pro rata, according to their wages, and the other three-quarters to the owners, respectively, with costs.